**Martin DAVIS, Plaintiff,**

v.

**TOWN OF HEMPSTEAD, Town of Hempstead Employees: Individually and in their official capacities, Merik Aaron, Vincent Ferdico, David Chaumont, Eric Nyman, and Merik Aaron'S Superiors. James Martino, Paul Gressin, individually and as Hewlett Fire Commissioner. Marco Bendetto, County of Nassau, John & Jane Does, 1–10, Defendants.**

No. 97–CV–4377(TCP)(MLO).

United States District Court,
E.D. New York.

Dec. 12, 2003.

Martin Davis, Woodmere, NY, Pro se.

Scott Kenneth Winikow, Zetlin & De Chiara, LLP, New York City, Kevin G. McMorrow, Ahmuty, Demers & McManus, Esqs., Albertson, NY, for Defendants.

Mary E. Mahon, Hempstead Town Attorney's Office, Ronald J. Levinson, Esq., Town Attorney for Town of Hempstead, Deputy Town Attorney, Hempstead, NY, for Defendants/Cross Defendants.

Frank Rossetti, III, Nassau County Attorney's Office, Mineola, NY, for Defendant/Cross Claimant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

In a Summary Order dated June 5, 2003, the Court of Appeals for the Second Circuit affirmed this Court's dismissal of

plaintiff's claims arising out of the "1996 incidents" and vacated this Court's dismissal of plaintiff's claims arising out of the "1997 incidents" and remanded the case for further proceedings with respect to the latter.

## BACKGROUND

This case has a history dating back to 1996.

Plaintiff Martin Davis ("plaintiff" or "Davis"), commenced three federal court actions against the Town of Hempstead relating to his property at 202 Franklin Place, Woodmere.[1] Plaintiff has owned the property located in Woodmere since 1966. A portion of the property is within the district zoned for business. The remainder is within the district zoned for residential light manufacturing. Despite these zoning restrictions, plaintiff has used the rear portion of the property (zoned for residential-light manufacturing) in connection with his well drilling business since 1974 pursuant to a Certificate of Occupancy.

In the 1996 case (96–CV–3407), Davis, proceeding with an attorney, complained that defendants Town of Hempstead, Paul Gressin ("Gressin") and County of Nassau unlawfully entered his property in August of 1996 and removed a large quantity of his "business property" from the premises, including flammable and explosive materials. This Court dismissed this case in May 1999. This decision was affirmed by the Second Circuit on March 10, 2000. (*Davis v. Town of Hempstead,* 208 F.3d 202, 2000 WL 268571 (2d Cir.2000)) (a copy of which is annexed hereto).

In the case at bar (97–CV–4377), plaintiff, proceeding *pro se,* sued the Town of Hempstead and various individual employees and the County of Nassau and various individual employees for demolishing a structure deemed "dangerous" by the Town in August 1997. The Town of Hempstead claims that the building was demolished because it was unsafe.

## A. Specific Facts of 1996 Case

From 1966 through 1973, plaintiff was cited on numerous occasions for accumulating rubbish and flammable materials on his property and for obstruction of access to his property. On August 26, 1991, the Town of Hempstead issued plaintiff a summons on grounds that he was storing junked vehicles on his property in violation of the Town Building Code.

On March 26, 1984, plaintiff and defendant Town of Hempstead entered into a consent judgment authorizing the Town to commence an action against plaintiff should he violate any Town code or ordinance on his property. In spite of this judgment, plaintiff continued to accumulate rubbish, junked vehicles and various flammable materials on the premises. On October 14, 1994, the Town of Hempstead issued plaintiff a summons for storing junked motor vehicles, rusted machines and other debris on his property in violation of Section 196, Article 16 and Section 173–11 of the Building Zone Ordinance. On September 14, 1995, plaintiff again received a summons for violating the Town's Building Zone Ordinance.

In November 1995, defendant Gressin sent a letter to the Town of Hempstead in which he detailed the condition of plaintiff's property and concluded that the property posed a significant risk to fire safety. Gressin is the Chairman of the Board of Fire Commissioners of the Hewlett Bay Fire District, a position he has held since 1995. He has served as Com-

---

1. Although the 1999 complaint does not indicate the specific property at issue, it is assumed to be the Woodmere property.

missioner of the District since 1992. Gressin is also the Senior Assistant Fire Inspector for the District and a former Chief of the Hewlett Fire Department.

In response, the Town commenced an action against Davis in Supreme Court, Nassau County, later that month. On February 8, 1996, Justice Marvin E. Segal issued an order enjoining Davis from "utilizing the portion of the subject premises within the business district for the outside storage of a junked car or cars ... and 2) utilizing the portion of the subject premises within the light manufacturing district for the outside storage of a junked car or cars, as defined by the Code Section 173–10, and or parts therefrom." *Town of Hempstead v. Davis*, (N.Y.Sup.Ct. Feb. 8, 1996).[2] On June 21, 1996, Justice Segal further ordered that:

> upon 30 days written notice ... the [Town of Hempstead] may enter the outside of [Davis's] premises to remove such rubbish from the outside of said premises that the Fire Commissioner of the Hewlett Bay Fire District determines 1) constitutes a violation of the preliminary injunction set forth in the order dated February 8, 1996 and 2) constitutes a fire or health hazard pursuant to Town Law Section 65(5–a).

*Town of Hempstead v. Davis*, (N.Y. Sup. Ct. June 21, 1996).[3]

The Town contends that plaintiff was served with a copy of this order, along with a letter notifying plaintiff of its intention to enter onto his property after 30 days to remove the hazardous materials should plaintiff fail to do so himself.

Thereafter, on August 7, 1996, Town of Hempstead officials entered plaintiff's property pursuant to Justice Segal's June 21, 1996 order and confiscated plaintiff's well-drilling equipment, tools, office machines, abandoned automobiles and other rubbish. Town workers also removed a faded and largely illegible sign that endorsed a candidate for school board in an election that occurred months prior to the cleanup. At the time, Nassau County police officers were on the premises but did not actively assist Town officials with the cleanup.

During the course of the cleanup, Town employees became concerned for their safety because the side wall of plaintiff's residence appeared to be on the verge of collapse. Having concluded that the side wall was badly deteriorated, employees of the Town of Hempstead entered the residence and shored and braced the exterior wall of the residence in order to ensure the continued safety of workers on the premises.

Shortly thereafter, plaintiff began to behave in an irrational and disruptive manner, to wit, climbing a tree on his property and swinging from limb to limb.[4] In response, Nassau County police officers transported plaintiff by ambulance to the Nassau County Medical Center psychiatric ward. Plaintiff was discharged later that day.

---

**2.** On May 7, 1996, the Appellate Division, Second Department affirmed Justice Segal's February 8, 1996 decision. *See Town of Hempstead v. Davis*, No. 96–2823 (N.Y.App. Div. May 7, 1996).

**3.** On December 8, 1997, the Appellate Division, Second Department affirmed Justice Segal's June 21, 1996 order. *See Town of Hempstead v. Davis*, 245 A.D.2d 366, 666 N.Y.S.2d 440 (2nd Dep't.1997).

**4.** Plaintiff claims that he was not swinging from tree branches. Instead, plaintiff asserts that as officials from the Town of Hempstead approached his property without a warrant (but pursuant to Justice Segal's June 21, 1996 order), he climbed the tree out of "fear for his [personal] safety." (Pl.'s Br. at 7).

On August 8, 1996, Town officials conducted an emergency inspection of plaintiff's residence to determine the stability of the dwelling, the second floor of which was badly damaged due to a large hole in the roof that exposed the area to weather. That same day, Nassau County police officers observed plaintiff walking along high voltage railroad tracks carrying a metal ladder. Nassau County police officers took plaintiff into custody and transported him to the Nassau County Medical Center. Again, plaintiff was released that same day.

This Court dismissed Davis' claims including the § 1983 claims against the Town for violations of Davis' First, Fourth, Fifth, and Fourteenth Amendments; the § 1983 claims against Gressin based on the same alleged constitutional violations; and the § 1985 claims for conspiring to deprive Davis of his constitutional rights. This opinion was affirmed by the Second Circuit on March 10, 2000 (as indicated, a copy of this opinion is annexed).

## B. *Specific Facts of 1997 Case*

During the clean-up of Davis' property which was the subject of the 1996 action, the Town became concerned that a building on his property might be unsound. Due to these concerns, the Town ordered an emergency inspection. As a result, defendant James Martino ("Martino"), a Registered Architect, proceeded to inspect a two and a half story building with the

Assistant Supervisor of Inspection Services, defendant Vincent Ferdico on August 9, 1996.[5] This building was not demolished and is not involved in this action.

On August 16, 1996, Martino returned to the property and performed an inspection of a detached one and a half story masonry and wood framed, barn-type garage structure and adjacent storage rack. This inspection revealed severe cracks in all four walls and a majority of the attic had collapsed. Martino deemed these structures to be "Dangerous Buildings," in a written report dated August 16, 1996, detailing his findings.

In October 1996, Davis was notified in writing of these findings and advised that a Town Board hearing thereon was scheduled. On February 25, 1997, the Town Board of the Town of Hempstead held a hearing in which Davis' expert and attorney testified. At the conclusion of the hearing, the Board passed a resolution requiring Davis to correct the dangerous deficiencies or failing that, the Town would remove the structures. Davis was notified of the resolution by certified mail return receipt dated March 3, 1997.

On June 2, 1997, the plaintiff having failed to take any remedial action, a letter was written by defendant Gressin advising Davis of the continuing danger of the property.

Davis then brought an Article 78 proceeding in the State court. Thereafter, on

---

**5.** N.Y. Town Law 138 provides in pertinent part:

Such inspector shall have charge of the enforcement of such codes, ordinances, rules and regulations of the town and of the zoning ordinance of the town, if there be one, and for such purposes such inspector, and his assistants, if any, shall have the right to enter and inspect at any time any building, structure or premises and to perform any other act necessary for the enforcement of such codes, ordinances, rules or regulations, or any of them.

In any such town, the town board may appoint a deputy building inspector to assist the building inspector in the duties of his office. Such deputy building inspector and assistant building inspectors shall perform such duties not inconsistent with law as shall be assigned, respectively, by the building inspector and in the performance thereof shall have the same right to enter and inspect any building and perform other necessary acts as hereinbefore conferred upon the building inspector.

July 25, 1997, Davis proceeded by Order to Show Cause in the Supreme Court, Nassau County (Justice Driscoll), seeking a stay preventing the Town from acting upon said Resolution. On August 1, 1997, Justice Driscoll denied the stay and dismissed the proceeding as time barred.

On August 14, 1997, the Town entered Davis' property and demolished the dangerous structures.

Then, this 1997 action was commenced by Davis. Davis alleged violations of his Fourth, Fifth, Ninth, Fourteenth Amendments brought pursuant to 42 U.S.C. §§ 1983 and 1985 concerning the demolition incident.

### DISCUSSION

#### I. Res Judicata

■ According to the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Weston v. First Union Nat'l Bank*, 201 F.3d 434, 1999 WL 1070056, at *2 (2d Cir.1999) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). New York takes a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief. *Weston*, 201 F.3d 434, 1999 WL 1070056, at *2.

■ In the instant action, res judicata prevents suit against all defendants except Martino. The event that formed the basis for plaintiff's 1996 action, namely, defendants' alleged illegal search of plaintiff's property, was part of the same transaction and indeed, formed the basis for plaintiff's current suit. To wit, it was during defendants' initial search that they became aware of structural problems on plaintiff's property. Moreover, all defendants in the

instant action with the exception of defendant Martino, were or could have been parties to the 1996 case and the facts at issue and the 1983 and 1985 constitutional claims were the same as in the instant action. Plaintiff does not dispute that he had a full and fair opportunity to litigate the constitutional issues with respect to the removal of his property, and in fact he was represented by counsel in the 1996 action. Thus, plaintiff is precluded from litigating the same issues against the Town defendants, defendant Gressin, and Nassau County defendants.

#### II. Proximate Cause

■ In order to succeed on a 1983 action, "the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.1998). Here, there is no such causal link and the building inspector and his agents including Martino, who entered on private property to fulfill emergency inspection orders of a Town Board and rendered a report of what he saw, should not be held liable for an alleged illegal search and seizure, for any violation of due process, for trespass or for violation of anyone's civil rights.

Indeed, the following is all Martino did as a Town-retained, Registered Architect: He accompanied the representative of the building inspector, pursuant to the Town's emergency inspection order on August 9, 1996, in order to inspect a building which was not demolished and is not involved in this action. Again, on August 16, 1996, Martino returned to the property and performed a further inspection of a detached one and a half story masonry and wood framed, barn-type garage structure and adjacent storage rack. His inspection revealed severe cracks in all four walls and that a majority of the attic had collapsed. Martino determined these structures to be "Dangerous Buildings" and made a written

report to the Town Board dated August 16, 1996, recording these facts.

Martino never instructed the Town or any person to remove any structures. He did not testify or even attend the hearing before the Town Board and did not participate in the Board's decision or in the Article 78 proceeding. Moreover, the indisputable fact is that Martino's involvement in any alleged improper aspect of the demolition of one of the structures on plaintiff's premises was so attenuated as to be de minimus. The testimony, pro and con, at the Town Board hearing and the deliberation and decision of the Town Board members virtually destroyed any causal link between Martino and the subsequent demolition of plaintiff's property.

### III. Qualified Immunity

In any event, all the defendants are entitled to qualified immunity for their actions. To avail themselves of a qualified immunity defense, defendants must show that (a) their actions did not violate clearly established law, or (b) it was objectively reasonable for them to believe that their actions did not violate such law. *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101–02 (2d Cir.2003). Here, not only were their actions clearly in compliance with Town Law but it was objectively reasonable for all defendants to believe that their actions did not violate any clearly established law.

First, most of the defendants in this case may assert that they were acting under the authority of a Town Board resolution, adopted after a full hearing. Second, all of the defendants may assert that they relied on a decision by the New York State Supreme Court, holding that the Town and all of its employees and agents were free to proceed with the demolition in accordance with the resolution of February

25, 1997. Indeed, although the Court of Appeals correctly states that New York Supreme Court Justice Joseph Driscoll's decision, dismissing Davis' Article 78 proceeding as time barred, does not bar the future assertion of other claims that could not have been raised in the same proceeding, the fact is, that, while all of the necessary parties were represented before him, Justice Driscoll specifically held, *after dismissing the Article 78 proceeding*, that:

all activity on the site by the respondent, Town of Hempstead, is stayed until August 12, 1997 and as of August 13, 1997 in accord with the aforementioned project notification the respondent, Town of Hempstead, is free to proceed with the asbestos removal. Upon the successful conclusion of which after assuring an asbestos safe working environment the respondent, Town of Hempstead, is free to proceed with the demolition in accord with their resolution of February 25, 1997.

This constitutes the decision of the Court.

*In the Matter of the Application of Martin Davis*, No. 97–21460, at 4. (N.Y.Sup.Ct. Aug. 1, 1997).

No objection was raised by the plaintiff's representative at the hearing, nor was any appeal taken from such "decision of the Court". There was nothing to prevent the plaintiff from having brought simultaneous cases raising constitutional issues in the Supreme Court or this Court. Therefore, reliance on Justice Silverman's decision may not be said to be unreasonable.

Finally, while there may be some question with respect to Mr. Martino's entitlement to the qualified immunity available to public officials, in this case, defendant Martino should be so qualified. Martino was acting as an inspector for the Town Board [6] and under N.Y. Town Law 138,

---

**6.** In the transcript from the hearing before the Town Board on February 27, 1997, Com-

missioner Nocella specifically refers to Marti-

had express authority and permission to enter plaintiff's property in order to conduct an inspection. Moreover, Martino's actions were taken in good faith and at the express direction of the Town Board. Therefore, it was objectively reasonable for him to believe that his actions did not violate clearly established law.

For the foregoing reasons, all Defendants' motions for summary judgment on the 1997 incidents are hereby granted again.

SO ORDERED.

no as "our Field Inspector." (Hempstead    Town Board Hearing at 6).